58053. GANT, INC. v. CITIZENS & SOUTHERN NATIONAL BANK et al.

CARLEY, Judge.

On May 30, 1978, the Citizens & Southern Bank (C & S) obtained a judgment against Gordon Malloy, an independent manufacturer's sales representative for Gant. On June 15, 1978, C & S filed a summons of garnishment against Malloy, naming Gant as garnishee. Gant answered the summons, stating that it owed no money to Malloy and held no sums which were subject to garnishment. C & S filed a traverse to Gant's answer, "saying the same is untrue or legally insufficient." Four additional garnishments were subsequently served on Gant, whose answer continued to be a denial of any garnishable sums. On each occasion Gant's answer was traversed by C & S. All traverses were consolidated for hearing. The trial judge made findings of fact and, based upon those findings, concluded that there was an arrangement "constituting fraud and collusion" between Malloy and Gant which was being used to defeat the garnishment by C & S. Judgment was entered against Gant and in favor of C & S on its traverse in the amount of its judgment against Malloy. Gant appeals.

1. The evidence shows that some three years before the service of the summons of garnishment in this case Malloy, as an independent contractor, began to serve as a sales representative for Gant. In that capacity Malloy purchased from Gant, on open account, samples of its various clothing lines. Malloy's indebtedness to Gant for these samples was maintained on Gant's accounts receivable ledger. Malloy traveled in the southeast

showing these samples and obtaining orders for their purchase. Gant advanced travel expenses, which were treated as loans to Malloy and which were maintained as accounts receivable to Gant. In addition, Malloy was authorized to make personal purchases from Gant on open account which were also carried by Gant as accounts receivable. Gant urges that as garnishee it had a right to set off any debts owed to it by Malloy and, since at all times applicable in the instant case its claim against Malloy on open account for the above referenced items exceeded its indebtedness to Malloy, the traverse to Gant's answers should have been denied. *Elder Bldg. Supply Co. v. Wall,* 114 Ga. App. 117, 120 (150 SE2d 350) (1966).

"All debts owed by the garnishee to the defendant at the time of service of summons of garnishment upon the garnishee and all debts accruing from the garnishee to the defendant from the date of service to the date of the garnishee's answer shall be subject to process of garnishment, and no payment made by the garnishee to the defendant or to his order, or by any arrangement between the defendant and the garnishee after the date of the service of the summons of garnishment upon the garnishee shall defeat the lien of garnishment." Code Ann. § 46-301 (a). "The other arrangements referred to mean arrangements constituting 'fraud and collusion between the defendant and the garnishee.' [Cit.]" *W. C. Caye & Co. v. Milledgeville Banking Co.,* 91 Ga. App. 664, 668 (86 SE2d 717) (1955).

The evidence in the instant case shows that at about the time that the first garnishment was served Malloy was indebted to Gant on all his accounts. Between the time of service of the initial summons of garnishment and the time Gant filed its last answer, it paid to Malloy $17,400 in "advances" on his commission. At about the time that the last answer was made Malloy was indebted to Gant in an amount many thousands of dollars *more* than he had been indebted originally and several thousands of dollars more than the $17,400 he had received from Gant during the same period. C & S urges that there was fraud and collusion between Gant and Malloy to increase the latter's indebtedness to the former

so as to avoid garnishment and that the $17,400 "advanced" by Gant to Malloy during this time was made pursuant to this "arrangement" and violated the tenor of Code Ann. § 46-301 (a).

The issue formed on a traverse to an answer of a garnishee is whether or not the garnishee was indebted to or had assets of the defendant between the time of the service of the summons of garnishment and the time of the answer by the garnishee. *Aiken v. Smith,* 68 Ga. App. 538, 542 (23 SE2d 584) (1942). "The situation which the garnishing plaintiff occupies in respect to the garnishee can be no better than that which the defendant himself occupies in respect to the garnishee. If the defendant himself, suing the garnishee, could not get a judgment against him, the garnishing plaintiff can not get a judgment against the garnishee. The creditor may stand in his debtor's shoes by means of garnishment, but he gains no additional privileges." *Singer Sewing Mach. Co. v. Southern Grocery Co.,* 2 Ga. App. 545 (1) (59 SE 473) (1907). Since the garnishee is entitled to pay himself before he is required to collect for the benefit of others, if the garnishee's claim against the defendant exceeds the amount of debt due the defendant by the garnishee, the garnishee's right of setoff defeats the plaintiff's claim against the garnishee. *Elder Bldg. Supply Co.,* supra. There is, however, a proviso with regard to the garnishee's right to claim a setoff because of the defendant's debt to him. "A garnishment lien becomes perfected upon the rendition of a valid judgment in favor of the garnishing creditor against the defendant [cit.], subject, however, to any claim or right of offset in the garnishee, at the time of the service of the summons of garnishment, or subsequently thereto up to the time for the answer, *provided the right in the garnishee was not a result of bad faith on its part.*" (Emphasis supplied.) *Jacobs' Pharmacy Co. v. Southern Bell Tel. Co.,* 56 Ga. App. 661 (193 SE 487) (1937).

Gant argues that the increase in Malloy's indebtedness to it was solely the result of the pre-existing contract between itself and Malloy. However, the record indicates that whereas before service of the summons the balance of Malloy's accounts with Gant had been

occasionally reduced by Gant through credits applied from Malloy's earned commissions, thereafter such credits from commissions were never applied by Gant to reduce Malloy's indebtedness. Malloy's indebtedness to Gant was allowed to increase without being reduced at all. In other words, after service of the summons Gant continued to "advance" Malloy without requiring any amount to be paid toward the reduction of the indebtedness owed to Gant. Compare *Oxford v. Metter Lumber Co., Inc.*, 104 Ga. App. 758 (123 SE2d 156) (1961). Some two weeks *after* the summons was served Gant made a loan to Malloy in the amount of $2,600 not in furtherance of the contract but because he had "twin girls in finishing school, and [he] needed an advance." This loan was evidenced by a note to Gant executed by Malloy and is apparently the only such loan or advance which was ever documented in writing. Compare *Adair-Levert Inc. v. Atlanta Env. Co.*, 70 Ga. App. 685 (2) (29 SE2d 323) (1944): "The fact that the defendant executed notes evidencing his indebtedness to the garnishee and continued to work for the garnishee does not show a scheme or device to defraud the garnishing creditor, where the evidence showed that the indebtedness of the defendant was incurred *before* the service of the summons of garnishment." (Emphasis supplied.) Furthermore after the service of the summons of garnishment Malloy formed a corporation and thereafter Gant made Malloy's weekly advances in the form of checks payable to this corporation. Under the circumstances, we do not agree with Gant's argument that the increase in Malloy's indebtedness to it was solely a function of the pre-existing contract between them. Rather, this evidence supports the trial court's finding that "[t]he increase in the indebtedness to [Gant] here does not reflect any bona-fide business purpose, but instead is simply a collusive attempt to avoid [C & S's] garnishment." "When the trial judge is the trior of an issue of fact the appellate courts will not interfere with his finding when there is any evidence to support it. [Cit.]" *Guardian of Ga., Inc. v. Granite Equipment Leasing Corp.*, 130 Ga. App. 514, 515 (203 SE2d 733) (1974). There being evidence to support the trial court's finding that "advances" made by Gant to Malloy after the date of the

service of the summons of garnishment were made pursuant to an "agreement" between Gant and Malloy to increase the latter's indebtedness to the former so as to defeat the lien of garnishment rather than pursuant to an existing contract, the judgment in favor of C & S, the garnishing plaintiff, and against Gant, the garnishee, was proper. Code Ann. § 46-301 (a). Compare *Singer Sewing Mach. Co.,* supra.

2. Gant's reliance on *Hartsfield Co. v. Zakas Bakery,* 50 Ga. App. 284 (177 SE 825) (1934) for the proposition that the $17,400 it advanced Malloy was not a "debt" it owed him is misplaced. In *Hartsfield* the defendant received all the proceeds from the sale of the garnishee's goods, retained his own commission and delivered the remaining proceeds to the garnishee. It was held that on these facts, the garnishee was never indebted to the defendant, having never been in possession of any amount due to him. Here, however, Malloy did not receive any proceeds from buyers or retain his own commissions. He merely took orders, which were sent to Gant, who in turn filled them, received the proceeds and then "advanced" Malloy his commissions. Thus Gant was in possession of amounts due to Malloy. On these facts, the "advances" were debts owed by Gant to Malloy and were, therefore, subject to garnishment. Code Ann. § 46-301 (a).

*Judgment affirmed. Deen, C. J., and Shulman, J., concur.*

Argued July 2, 1979 — Decided September 5, 1979.

*Andrew J. Hinton,* for appellant.
*David E. Krishner,* for appellees.