## 76632. PRUDENTIAL-BACHE SECURITIES, INC. v. BARTOW COUNTY BANK.
### (370 SE2d 751)

BANKE, Presiding Judge.

This is a garnishment action initiated by the appellant against the appellee bank to collect a judgment in the approximate amount of $55,000 which the appellant had previously obtained against one of the bank's depositors, Edward E. Johnson. The bank acknowledged in its answer that it was indebted to Johnson on a $200,000 certificate of deposit but asserted that this certificate was not subject to garnishment because Johnson had previously assigned it to the bank as security for a corporate indebtedness which he had personally guaranteed in the amount of $750,000. This indebtedness was evidenced by two notes made payable to the bank which were alleged to be in default both because the corporate maker had failed to make all of the payments required thereunder and because it had initiated bankruptcy proceedings.

The appellant traversed the bank's answer and subsequently learned, through discovery, that the bank was also in possession of approximately $10,000 in accrued interest payable on the certificate of deposit, a fact it had neglected to mention in its answer. Following an evidentiary hearing, the trial court denied the appellant's traverse, concluding that the bank had a superior claim to both the principal and the interest owing on the certificate. In addition, the court determined that the bank was entitled to recover from the appellant its litigation expenses, including attorney fees, pursuant to OCGA § 18-4-97. The case is now before us pursuant to our grant of the appellant's application for a discretionary appeal. See generally OCGA § 5-6-35 (a) (4).

After the appeal was docketed and after both parties had filed their briefs, counsel for the bank notified this court, by letter dated April 5, 1988, that the defendant-in-garnishment, Johnson, had died on April 2, 1988. However, as the defendant-in-garnishment has never made any appearance in the case, either in this court or in the court below, we deem it appropriate to proceed to the merits of the appeal without resorting to the procedure set forth in Rule 39 of this court for securing the participation of a deceased party's representative in the event of the party's death during the pendency of an appeal. *Held*:

1. The appellant contends that the written documents pursuant to which the defendant-in-garnishment had assigned the certificate of deposit to the bank as collateral for the corporate indebtedness did not give the bank a perfected security interest in the certificate pursuant to Article 9 of the Uniform Commercial Code. We agree. The certificate specified on its face that it was "non-transferable," with

the result that it can be considered neither a "negotiable document" nor an "instrument" within the contemplation of the UCC, see OCGA §§ 11-9-105 (1) (i); 11-9-304; 11-9-305. Moreover, it has previously been observed by this court that "the secured transactions article of the Uniform Commercial Code does not apply to transfers of bank deposits or savings accounts." *Spurlock v. Commercial Banking Co.*, 138 Ga. App. 892, 894, fn. 1 (227 SE2d 790) (1976), aff'd 238 Ga. 123 (231 SE2d 748) (1977). However, it does not follow that the assignment documents were ineffective to give the bank a superior claim to the deposits represented by the certificate, for it has been held that an agreement which purports to transfer a security interest in bank deposits but is ineffective to do so may nevertheless be effective to create a contractual lien on such deposits. Accord *Spurlock*, supra, 138 Ga. App. at 895. We have been offered no reason why the defendant-in-garnishment's clear intention to create such a lien in favor of the bank should not be honored.

"[W]hile the garnishment law [seeks] to prevent evasions and subterfuges, it does not intend to violate existing contracts or restrain the right to contract. It is only intended to reach something actually due the defendant and which he could recover himself." *J. Austin Dillon Co. v. Edwards Shoe Stores*, 53 Ga. App. 437, 439 (186 SE 470) (1936). A judgment creditor is "bound by existing, though unrecorded, counterclaims, setoffs, pledges, encumbrances, or liens (cits.) whether the latter be created by contract or by operation of law. . . ." *Owens v. Atlanta Trust &c. Co.*, 122 Ga. 521, 523 (50 SE 379) (1905).

The assignment documents were executed by the defendant-in-garnishment on April 14, 1986, the same day the certificate of deposit was issued to him by the bank, whereas the present garnishment action was not initiated until February 18, 1987. It follows that the bank's contractual lien on the deposits represented by the certificate must be considered superior to the appellant's lien of garnishment, with the result that the deposits were not subject to garnishment. We do not reach the issue of whether the bank's contractual lien survived the maturity date specified on the certificate of deposit, which was April 14, 1987, as the bank's answer was filed prior to that date; and this proceeding cannot be considered a "continuing" garnishment action within the contemplation of OCGA § 18-4-110 et seq.

2. We now turn to the issue of whether the interest which had accrued on the certificate of deposit was subject to garnishment. The certificate specified on its face that interest was to accrue at the rate of 7.5 percent per annum and that it was to be paid to the depositor in the form of checks mailed to him on a monthly basis. The assignment documents contained no reference to these payments; however, as of the date the bank filed its answer, it had retained eight such

interest checks, in the total amount of almost $10,000, without mailing them to the defendant-in-garnishment. As previously indicated, the bank's answer included no reference to these checks.

We find no language in the assignment documents which would support the bank's contention that its contractual lien on the certificate extended to these funds. We thus proceed directly to the bank's alternative contention that even if it did not have a superior contractual lien on the accrued interest represented by the checks, it nevertheless had a superior claim to the funds by virtue of its common law right of set-off.

"[A] garnishee, if the debtor be indebted to him, has a lien on funds coming into his hands, or future indebtedness to the debtor on his part, superior to that of the plaintiff in garnishment. He is entitled to pay himself before he is required to collect for the benefit of others. . . ." *Florida First Nat. Bank v. First Nat. Bank of Columbus*, 154 Ga. App. 211, 213 (267 SE2d 849) (1980), citing *Mutual Reserve &c. Co. v. Fowler*, 2 Ga. App. 537, 540 (2) (59 SE 469) (1907). Accord *First Nat. Bank of Atlanta v. Sinkler*, 170 Ga. App. 668 (5) (317 SE2d 897) (1984); *Gant, Inc. v. C & S Nat. Bank*, 151 Ga. App. 212, 214 (259 SE2d 485) (1979).

The appellant contends that no such right of set-off arose in this case because it applies only with respect to *matured* debts owed to the garnishee by the defendant-in-garnishment. Cf. *Washington Loan &c. Co. v. First Fulton Bank &c.*, 155 Ga. App. 141 (1, 3) (270 SE2d 242) (1980). It is apparent, however, that the defendant-in-garnishment's liability on his guarantee of the corporate notes was in fact presently enforceable, there being no question that the notes were in default, and the bank having been expressly relieved by the terms of the guaranty agreements of any obligation to initiate collection efforts against the corporate debtor as a prerequisite to proceeding against the defendant-in-garnishment. Consequently, we conclude that the bank is correct in its contention that it had a common-law right of set-off with respect to the interest checks which, like its contractual lien on the certificate itself, was superior to the appellant's lien of garnishment.

It does not follow, however, from the fact that the bank *had* a common law right of set-off against the accrued interest that its actions were sufficient to constitute an *exercise* of that right. It is apparent from the record that at the time the bank filed its answer it had not yet actually applied any of the interest owing on the certificate of deposit against the indebtedness represented by the corporate notes. Indeed, there is no indication that it has done so to this date. Rather, acting in reliance on the possibility that the corporate debtor's assets, a significant portion of which had evidently been pledged to the bank as security for the notes, would be adequate to

discharge its indebtedness on the notes, the bank had simply held the interest checks in reserve, adopting a "wait-and-see" attitude.

We do not believe the bank was entitled to have it both ways, i.e., both to retain possession of the interest checks and to postpone making a decision on whether actually to apply the indebtedness represented by those checks against the indebtedness owed by the defendant-in-garnishment on the guaranty agreements. Compare *Washington Loan &c. Co. v. First Fulton Bank &c.*, supra. Rather, we conclude that by not exercising its right of set-off prior to filing its answer, the bank forfeited that right and became obligated to deliver the accrued interest to the court along with its answer, pursuant to OCGA § 18-4-84. To conclude otherwise would be to permit a garnishee to remove funds belonging to a judgment debtor from the pool of assets available for the satisfaction of the judgment without correspondingly reducing the liabilities of the judgment debtor, thereby facilitating evasion of the judgment. While the garnishee may legitimately maintain such a position with respect to property in which he has previously reserved a contractual lien or security interest, we do not believe he should be permitted to defeat a lien of garnishment with respect to property belonging to a judgment debtor merely by asserting, without exercising, a common-law right of set-off in such property. We consequently hold that the trial court erred in the present case in denying the appellant's traverse with respect to the funds represented by the interest checks.

3. Because the bank's answer included no reference to the interest checks, and because we have held that these funds were subject to garnishment under the facts of this case, it necessarily follows that the award of litigation expenses to the bank pursuant to OCGA § 18-4-97 must also be reversed, as that Code section authorizes such an award only where the expenses are incurred "in making a true answer of garnishment."

*Judgment affirmed in part and reversed in part. Birdsong, C. J., and Beasley, J., concur.*

## On Motion for Rehearing.

On motion for rehearing, the bank contends that, notwithstanding the inapplicability of Article 9 of the UCC to the certificate of deposit itself, it acquired a perfected security interest in the interest checks pursuant to OCGA §§ 11-9-304 (1) and 11-9-305 by retaining possession of these "instruments" with the consent of the payee. We find this contention to be without merit. The checks cannot be considered "instruments" within the contemplation of the UCC (see OCGA § 11-9-105 (1) (i)) for the very reason that they were never delivered to the payee. "Delivery is essential to the existence of a ne-

gotiable instrument as an aspect of its original issue by the maker or drawer." 6 Anderson, Uniform Commercial Code, § 3-305:71, p. 43 (3rd ed., 1984). Thus, the only significance of the checks is that they represent an acknowledgment by the bank of the amount of unpaid interest which had accrued on the certificate of deposit in the months prior to the filing of its answer.

The bank further argues on motion for rehearing that it should not be taken to task either for failing to disclose in its answer the amount of the accrued interest obligation represented by the checks or for failing to exercise its common-law right of set-off with respect to this obligation, because simultaneously with the filing of its answer it filed a separate pleading, entitled "Claim of Bartow County Bank," in which it sought the court's permission to set-off against the depositor's indebtedness to the bank "the entire amount of said savings certificate of deposit, plus interest." We do not believe this language provided reasonable notice to anyone that the bank had withheld and was seeking to set-off, in addition to current interest due on the certificate, several months of accrued interest totalling in excess of $10,000. This is particularly true in view of the language of the certificate providing for the payment of interest to the depositor on a monthly basis. Thus, we conclude that this single reference to "interest" did not constitute an exercise by the bank of its right of set-off with respect to the accrued interest owing on the certificate. The motion for rehearing is therefore denied.

DECIDED MAY 18, 1988 —
REHEARING DENIED JUNE 14, 1988 — 

*Charles M. Dalziel, Jr.,* for appellant.
*William M. Akin,* for appellee.